**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **YUAN XIE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10 C 6777** |
| | ) | |
| **HOSPIRA, INC., CHRIS HAGEN,** | ) | |
| **DOROTHEA STOLL, THOMAS E.** | ) | |
| **WERNER, and CHRISTOPHER B.** | ) | |
| **BEGLEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Yuan Xie sued Hospira, Inc., Chris Hagen, Dorothea Stoll, Thomas E. Werner,
and Christopher B. Begley (collectively "Hospira"), contending that they retaliated
against him for reporting alleged violations of the Sarbanes-Oxley Act ("SOX") by his
immediate supervisor, Hagen. *See* 18 U.S.C. § 1514A(a). Hospira has moved for
summary judgment. The Court previously granted in part Xie's motion for additional
discovery pursuant to Federal Rule of Civil Procedure 56(d). *Xie v. Hospira, Inc.*, No.
10 C 6777, 2011 WL 1575530 (N.D. Ill. Apr. 27, 2011). The Court assumes familiarity
with that decision, which provided a brief summary of the facts underlying Xie's claim.
For the reasons stated below, the Court grants Hospira's motion for summary judgment.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light
most favorable to the non-moving party and draw[s] all reasonable inferences in that

party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court may grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Section 1514A of SOX bars an employer from retaliating against an employee for "any lawful act done by the employee . . . to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of" one of six enumerated categories of federal law. 18 U.S.C. § 1514A(a); *Harp v. Charter Commc'n, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009). Those categories are: "[18 U.S.C. §§] 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). In this case, Xie asserts that Hagen's actions resulted in fraud against Hospira's shareholders. *See* Pl.'s Resp. at 4, 6.

To prevail on a SOX retaliation claim, "an employee must prove by a preponderance of the evidence that (1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Harp*, 558 F.3d at 723 (internal quotation marks omitted). Even if the employee can establish these elements, the employer can still prevail "if it

-2-

can prove by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of that protected behavior." *Id.* (internal quotation marks omitted).

To engage in protected activity, an employee "must have actually possessed th[e] belief" that the employer's alleged actions were unlawful, "and that belief must be objectively reasonable." *Harp*, 558 F.3d at 723. In addition, the employee's complaint "'must definitively and specifically relate to one of the six enumerated categories'" of wrongdoing listed in 18 U.S.C. § 1514A(a)(1). *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 997 (9th Cir. 2009) (quoting *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476 (5th Cir. 2008)). This inquiry focuses "on whether the employee reported specific conduct that constituted a violation of federal law, not whether the employee correctly identified that law." *Harp*, 558 F.3d at 725. Given that Xie is a certified public accountant, the objective reasonableness of his beliefs "must be evaluated from the perspective of an accounting expert." *Allen*, 514 F.3d at 479.

Hospira does not dispute that it was aware of the actions that Xie contends protected activity or that Xie suffered an unfavorable personnel action. Instead, it argues, among other things, that Xie's rebuttal to his 2008 performance review did not constitute protected activity because Xie did not reasonably believe that Hagen's actions were unlawful. *See* Defs.' Mem. at 4-10. Xie counters that he has shown there are genuine issues of fact on this point. *See* Pl.'s Resp. at 2-6.

Though Xie's review rebuttal was not a model of clarity, it accused Hagen of violating federal law in two ways. First, Xie alleged that Hagen violated "SOX law regarding internal control on segregation of duties" by having Xie sign off on certain

accounting documents even though Xie did not prepare the documents. Pl.'s Resp. at 3. Second, Xie argued that Hagen violated "SOX law regarding material misstatement" by "not reporting a $6 million error in [Hospira's] August 2008 deferred margin rollforward schedule." *Id*. The Court will address each allegation separately to determine whether Xie's review rebuttal constituted "protected activity" for purposes of his SOX retaliation claim.

### 1.    Internal control violation

First, Xie alleged in his review rebuttal that Hagen violated Hospira's internal control policies regarding segregation of duties by requiring Xie to sign particular documents, despite the fact that Xie did not prepare those documents. Xie Dep., Ex. 13 at 13. He asserts that Hagen's actions ultimately resulted in fraud against Hospira's shareholders. Pl.'s Resp. at 4.

Xie has provided evidence suggesting that he subjectively believed Hagen's actions resulted in fraud against Hospira's shareholders. He has not, however, shown that there is a genuine issue of fact regarding the objective reasonableness of his belief. Xie repeatedly argues that Hagen's actions violated Hospira's internal control standards regarding the approval of documents. *See, e.g.*, Pl.'s Resp. at 4 ("A reasonable person would be aware of *the internal control standards within Hospira* and the Deferred Margin Group . . . . Therefore, it would have been reasonable for a reasonable person to believe that there was an *internal control issue* when Hagen had Xie sign the two documents") (emphasis added). He then argues that "the lack of internal control makes it plain that there was fraud against shareholders." *Id.* A mere

-4-

violation of internal policies, however, does not constitute fraud against shareholders. For example, in *Day v. Staples, Inc.*, 555 F.3d 42 (1st Cir. 2009), the plaintiff presented a "generalized theory that shareholder fraud resulted from three specific practices at Staples" relating to the company's internal tracking system and returns process. *See id.* at 55. The plaintiff alleged that these practices "resulted in the manipulation of accounting data" and defrauded Staples's shareholders. *Id.* at 44 (internal quotation marks omitted). The court rejected this argument, reasoning that "[a] disagreement with management about internal tracking systems which are not reported to shareholders is not actionable." *Id.* at 56. Because Day "made no showing that any inaccuracy was material to shareholders," his belief was objectively unreasonable. *Id.* at 57.

Similarly, Xie has only offered evidence that Hagen failed to comply with certain internal policies at Hospira. *See, e.g.*, Xie Dep., Ex. 13 at 13 ("Any issues related [to] *internal control* is [sic] material"). None of Xie's evidence, however, suggests that the documents at issue were given to shareholders or were otherwise made public or that they were in any way material to shareholders. Xie's failure to raise a genuine issue of fact in this regard is fatal to his claim. "'To have an objectively reasonable belief there has been shareholder fraud, the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud.'" *Van Asdale*, 577 F.3d at 1001 (quoting *Day*, 555 F.3d at 55). Moreover, Xie has not offered evidence from which a jury could draw a reasonable inference that Hagen's failure to comply with Hospira's internal control policies was the result of a conscious effort to mislead shareholders. Although the evidence may be read to suggest that Hagen or his

supervisors acted negligently, "[m]ere negligence on the part of the employer does not constitute a violation of federal law relating to fraud against shareholders." *See Allen*, 514 F.3d at 480.

Xie argues that Hagen's internal control violations led indirectly to fraud against Hospira's shareholders because the violations enabled Hagen to "book" $18 million of fraudulent income in 2008. Pl.'s Resp. at 4-5. The Court finds this argument to be unpersuasive for at least two reasons. First, Xie's calculations regarding the amount of "bookings" made by Hagen in 2008 are ill-explained and appear to be based on an arbitrary comparison between unrelated accounting figures. Second, Xie offers no evidence or coherent argument linking these bookings to Hagen's purported non-compliance with Hospira's internal control standards. As such, the bookings do not reasonably suggest that Hagen defrauded Hospira's shareholders. More fundamentally, they do not support Xie's argument that his allegation against Hagen constituted "protected activity" for purposes of a SOX retaliation claim.

In summary, Xie has not offered evidence "definitively and specifically" tying Hagen's alleged actions to one of the laws enumerated in section 1514A(a)(1). *Van Asdale*, 577 F.3d at 997 (internal quotation marks omitted). Because Xie has failed to support his theory of shareholder fraud with such evidence, no reasonable jury could find Xie's belief that Hagen violated one of these laws to be objectively reasonable.

## 2. $6 million discrepancy

Xie's review rebuttal also accused Hagen of concealing a $6 million accounting discrepancy during a management meeting on September 9, 2008. Xie Dep., Ex. 13 at

13-14. According to Xie, Hagen asked him to investigate the error prior to the meeting. *Id.* at 13. Xie was able to resolve the error and sent an e-mail to Hagen reporting his findings while the meeting was underway. *Id.* Xie alleged that Hagen's "face [became] red and very nervous when I showed [him] my finding after [the] meeting." *Id.* This apparently led Xie to believe that Hagen improperly failed to report the discrepancy to his colleagues at the management meeting. *Id.*; *see also* Pl.'s Resp. at 5-6. In Xie's view, Hagen never fully corrected the error and subsequently defrauded Hospira's shareholders by allowing the error to be reflected in the company's financial statements. *Id.* at 6.

The Court concludes that Xie has again failed to show the existence of a triable issue of fact regarding the objective reasonableness of his belief that Hagen's actions were unlawful. Xie admits that he did not attend the management meeting and therefore has no personal knowledge of what, if anything, Hagen said about the $6 million discrepancy. *See* Pl.'s Resp. at 5 ("While Xie may not know of the content during the Management Review Meeting . . . Xie is well aware of the purpose of the meeting"). Xie asserts that "if the issue was brought up during the meeting, deferred margin would not have been approved at the meeting," but aside from his own views about Hagen's body language and supposed reticence after the meeting, he offers no evidence on this point. *Id.*; *see also id.* at 6 (citations omitted) ("When Hagen came out of the meeting . . . [Xie] asked if he passed the deferred margin review. Because Hagen did not reply, Xie believed that the meeting went smoothly."). Moreover, Xie admitted during his deposition that he never asked Hagen "how he handle[d the $6

million discrepancy] in the meeting." Xie Dep. at 110:7. Because Xie offers no testimonial or documentary evidence suggesting that Hagen actually withheld information about the discrepancy during the management meeting, no reasonable jury could find that Hagen in fact did so.

Even if Xie were able to show that Hagen failed to inform others about the $6 million discrepancy, there is no evidence from which a reasonable jury could find that this conduct constituted fraud against Hospira's shareholders. First, based on Xie's review rebuttal, the discrepancy was the result of a simple calculation error that Xie was able to resolve. *See* Xie Dep., Ex. 13 at 13 ("Before he went to [the] meeting, [Hagen] asked me to find the error. I spent a few hours and f[ou]nd it which was due to Chris overwriting the Smartview formula."); *see also* Defs.' LR 56.1 Stmt. ¶ 57 (noting that Xie sent Hagen an email reporting the cause of the discrepancy). Because Xie was able to fix the error, there is no reasonable basis to conclude that the error resulted in harm to shareholders. *See Van Asdale*, 577 F.3d at 1001 (noting economic loss as an element of a claim of securities fraud). Xie argues that the error was not actually corrected and resulted in a $1.4 million discrepancy in Hospira's 2008 financial statements. Pl.'s Resp. at 6. In support, he cites a "deferred margin rollforward" document from August 2008. *See* Pl.'s LR 56.1 Stmt., Ex. E at 36. Xie offers no coherent explanation of how this document or its contents bear on the $6 million discrepancy. Moreover, he has not genuinely disputed that Hospira's "rollforward" files are internal accounting tools, not public documents available to shareholders. Xie asserts that these files have "direct effects [on] Hospira's publicly filed Financial Statements," but he has offered no evidence or comprehensible argument linking the figures on the August 2008

-8-

rollforward document to a publicly filed financial statement.  Pl.'s LR 56.1 Resp. ¶ 55.

In short, based on the current record, no reasonable jury could find that the $6 million

discrepancy harmed Hospira's shareholders.

Second and perhaps more importantly, even if Xie reasonably believed that the

$6 million discrepancy resulted in a material misstatement of Hospira's income, he has

offered no evidence suggesting that Hagen acted with intent to mislead his co-workers

or Hospira's shareholders.  Indeed, the parties agree that Hagen raised the issue

himself by asking Xie to investigate the discrepancy.  *See* Defs.' LR 56.1 Stmt. ¶ 56;

Pl.'s LR 56.1 Resp. ¶ 56.  Particularly in light of this fact, Hagen's alleged demeanor

after the management meeting does not give rise to a reasonable inference that he hid

the discrepancy with intent to defraud Hospira's shareholders.  For the reasons

discussed earlier, the absence of a genuine issue of fact in this regard is fatal to Xie's

retaliation claim.  *See Allen*, 514 F.3d at 480 ("In cases involving the sixth 'catch-all'

category [from section 1514A(a)], we conclude that the employee must reasonably

believe that his or her employer acted with a mental state embracing intent to deceive,

manipulate, or defraud its shareholders.").

In summary, based on the evidence before the Court, no reasonable jury could

conclude that Xie had an objectively reasonable belief that Hagen committed fraud

against Hospira's shareholders or violated any of the other laws enumerated in section

1514A(a) of SOX.  Therefore, Xie's review rebuttal did not constitute "protected activity,"

and Hospira is entitled to summary judgment on Xie's SOX retaliation claim.  Because

the Court concludes that Xie has failed to establish a genuine issue of fact on this

issue, it need not consider whether Xie's allegations were a contributing factor in

Hospira's decision to terminate him.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment [docket no. 18].  The Clerk is directed to enter judgment in favor of defendants.

MATTHEW F. KENNELLY
United States District Judge

Date:  September 2, 2011